**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

JAMES EARNEST JONES,

    Petitioner,

                                   Civil Action 4:11-CV-15594

v.                              HONORABLE GERSHWIN A. DRAIN
                              UNITED STATES DISTRICT COURT

SHERRY BURT,

      Respondent,

_____/

## OPINION AND ORDER DENYING THE PETITION FOR WRIT OF HABEAS CORPUS AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY OR LEAVE TO APPEAL IN FORMA PAUPERIS

## I.  INTRODUCTION

James Earnest Jones, ("Petitioner"), presently on parole supervision with the Michigan Department of Corrections through the St. Clair County Parole Office, has filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  In his *pro se* application, Petitioner challenges his conviction for three counts of second-degree criminal sexual conduct, MICH. COMP. LAWS § 750.520c, and being a second felony habitual offender, M.C.L.A. 769.10.  For the reasons stated below, the petition for writ of habeas corpus is **DENIED.**

## II.  **BACKGROUND**

Petitioner  was convicted of the above charges following a jury trial in the St. Clair County Circuit Court.

Petitioner ' daughter S.J. [1] testified that when she was in fifth grade, Petitioner came into her bed, removed her pants, and laid on top of her.  S.J. felt Petitioner ' penis in her vaginal area.  S.J. testified that sometime later, petitioner began watching her take showers. (Tr. 11/13/08, pp. 458-62).

Petitioner  sexually assaulted S.J. again when she was in eighth grade, when he ordered her to take off her shirt and fondled her breasts.  Petitioner also ordered S.J. to take her hand and wrap it around his penis.  Petitioner also ordered S.J. to perform oral sex on him, but she refused. (*Id.,* pp. 467-69).

S.J. testified that Petitioner  abused her a third time in the shower.  This incident occurred when she was in ninth grade.  Petitioner  fondled her in the shower by washing her breasts and genital area with a washcloth and also fondled her breast with his bare hand. (*Id.,* pp. 472-77).

After this last incident, S.J. felt that she should tell someone about her father's sexual abuse.  On the school bus later that morning, S.J.'s friends

---

[1]   Because the victim was a minor when these events took place, the Court will refer to her by her initials to protect her privacy.

saw that she was crying. When they inquired as to why she was upset, S.J. revealed to them what Petitioner had done to her in the shower. (*Id.,* pp. 475-76). S.J. subsequently informed her mother, grandmother and step-mother about the sexual abuse. (*Id.,* pp. 483-85). S.J.'s step-mother took her to school the next day and told the school counselor about the sexual abuse incident. (*Id.,* p. 487). The counselor called S.J. into her office and S.J. talked to Loni Burton, a Child Protective Services worker. (*Id.,* pp. 487-89).

Petitioner denied the allegations. Petitioner claimed that S.J. fabricated the allegations so that she could live with her step-mother. (Tr. 11/12/08, pp. 216-21; Tr. 11/14/08, p. 738).

Petitioner's conviction was affirmed on appeal. *People v. Jones,* No. 289946 (Mich.Ct.App. June 22, 2010); *lv. den.* 488 Mich. 915, 789 N.W.2d 462 (2010). Further facts will be discussed when addressing petitioner's claims.

Petitioner seeks a writ of habeas corpus on the following grounds:

I. Was defense trial counsel constitutionally ineffective in failing to object to a protective services worker and a detective improperly giving opinion testimony on Appellant's guilt?

II. Did the trial court violate Appellant's due process rights by allowing the prosecutor to introduce unfairly prejudicial evidence that Appellant voluntarily terminated parental rights to the complainant following the allegations resulting in the present

3

criminal charges?

III. Did the prosecutor violate Appellant's due process rights in closing argument by disparaging Appellant's exercise of the right to trial and commenting that the complainant had to testify, submit to cross-examination, and watch defense trial counsel call the complainant's brother and friends as witnesses; furthermore, was defense trial counsel constitutionally ineffective in failing to object?

## III.  <u>STANDARD OF REVIEW</u>

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective

Death Penalty Act of 1996 (AEDPA), imposes the following standard of review

for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

(1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
(2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal

law if the state court arrives at a conclusion opposite to that reached by the

Supreme Court on a question of law or if the state court decides a case

4

differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

The Supreme Court has explained that "[A] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 130 S. Ct. 1855, 1862 (2010)((quoting *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997)); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (*per curiam*)). "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011)(citing *Yarborough v. Alvarado*, 541 U.S.

5

652, 664 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade,* 538 U.S. 63, 75 (2003). Furthermore, pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or...could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.*

"[I]f this standard is difficult to meet, that is because it was meant to be." *Harrington,* 131 S. Ct. at 786. Although 28 U.S.C. § 2254(d), as amended by the AEDPA, does not completely bar federal courts from relitigating claims that have previously been rejected in the state courts, it preserves the authority for a federal court to grant habeas relief only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" the Supreme Court's precedents. *Id.* Indeed, "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id.* (citing *Jackson v. Virginia,* 443 U.S. 307, 332 n. 5 (1979))(Stevens, J., concurring in judgment)). Thus, a

"readiness to attribute error [to a state court] is inconsistent with the presumption that state courts know and follow the law." *Woodford,* 537 U.S. at 24.   Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington,* 131 S. Ct. at 786-87.

## IV.  ANALYSIS

### A.  Claim # 1.  The ineffective assistance of counsel claim.

Petitioner  initially contends that his trial counsel was ineffective for failing to object to the Child Protective Services worker and a detective expressing opinions as to Petitioner's guilt.

To show that he was denied the effective assistance of counsel under federal constitutional standards, a defendant must satisfy a two prong test. First, the defendant must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).   In so doing, the defendant must overcome a strong presumption that counsel's behavior lies

within the wide range of reasonable professional assistance. *Id.* In other words, petitioner must overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy. *Strickland,* 466 U.S. at 689. Second, the defendant must show that such performance prejudiced his defense. *Id.* at 687. To demonstrate prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* "*Strickland*'s test for prejudice is a demanding one. 'The likelihood of a different result must be substantial, not just conceivable.'" *Storey v. Vasbinder*, 657 F.3d 372, 379 (6th Cir. 2011) (quoting *Harrington*, 131 S. Ct. at 792). The Supreme Court's holding in *Strickland* places the burden on the defendant "who raises a claim of ineffective assistance of counsel, and not the state, to show a reasonable probability that the result of the proceeding would have been different," but for counsel's allegedly deficient performance. *See Wong v. Belmontes*, 130 S. Ct. 383, 390-91 (2009).

More importantly, on habeas review, "the question 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable-a

substantially higher threshold.'" *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)(quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)).  "The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable.  This is different from asking whether defense counsel's performance fell below *Strickland's* standard." *Harrington v. Richter*, 131 S. Ct. at 785.  Indeed, "because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Knowles,* 556 U.S. at 123 (citing *Yarborough v. Alvarado*, 541 U.S. at 664).  Pursuant to § 2254(d)(1) standard, a "doubly deferential judicial review" applies to a *Strickland* claim brought by a habeas petitioner. *Id.*  This means that on habeas review of a state court conviction, "[a] state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Harrington*, 131 S. Ct. at 785.

Because of this doubly deferential standard, the Supreme Court has indicated that:

> Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d).  When § 2254(d) applies, the question is not whether counsel' s actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

9

*Harrington*, 131 S. Ct. at 788.

In addition, a reviewing court must not merely give defense counsel the benefit of the doubt, but must also affirmatively entertain the range of possible reasons that counsel may have had for proceeding as he or she did. *Cullen v. Pinholster,* 131 S. Ct. 1388, 1407 (2011).

Finally, this Court is aware that "[R]eliance on 'the harsh light of hindsight' to cast doubt on a trial that took place" almost five years ago "is precisely what *Strickland* and AEDPA seek to prevent." *Harrington v. Richter*, 131 S. Ct. at 789.

Petitioner claims that the Child Protective Services Worker Loni Bunton expressed an improper opinion as to his guilt when she testified about the protocol for picking up or removing a child from a home if she felt that the child was not safe.  Ms. Bunton testified that after she spoke with S.J., "protocol" required her to contact the court for a "Pick Up Order." (Tr. 11/13/08, pp. 359-60).  Ms. Bunton explained that a Pick Up Order is needed when Child Protective Services "feel[s] that the child is not safe in the home; that they need to be removed from the home." (*Id.*, p. 360).  The following exchange between Ms. Burton and the prosecutor then took place:

[Prosecutor]: Okay. And whose home was it that you were

removing her from at that point?

[Ms. Burton]: Um, her father, Petitioner .

[Prosecutor]: Did you obtain that Pick Up Order?

[Ms. Burton]: Yes.

(*Id.,* p. 360).

Petitioner further alleges that Detective Sandra Jacobson offered an improper opinion as to his guilt when she described S.J.'s demeanor when Detective Jacobson questioned her about the sexual abuse.  On direct examination, the prosecutor asked Detective Jacobson what S.J.'s demeanor was like when she interviewed her.  Detective Jacobson responded:

> I guess I would describe her as appropriately uncomfortable. Same thing that's been discussed before.  Nobody really wants to sit and talk about that kind of an issue as a teenager with anybody, and particularly a total stranger, and it's been probably the second or third time she's had to speak about it, so appropriately uncomfortable.

(Tr. 11/13/08, p. 407).

The Michigan Court of Appeals rejected Petitioner's ineffective assistance of counsel claim:

> Defendant argues that his trial counsel should have objected to the testimony of a child protective services worker who provided an overview of her investigation into the complainant's allegations against defendant.  The witness described having collected information from the complainant and "um, *protocol*

11

after that was that I did contact the courts to ask for a Pick Up Order" (emphasis added).  When asked to define a "Pick Up Order" and explain how it is obtained, the witness testified that her agency "contact[s] the court and we inform them of information that we've received, um, and let them know that we feel that the child is not safe in the home; that they need to be removed from the home."  Defendant contends that discussion of the Pick Up Order amounts to an improper opinion by the child protective service worker regarding defendant's guilt.  Implicit in this explanation of procedure was that the agency had concluded that the complainant would be safer outside of defendant's home.  However, the jury could reasonably conclude that such a procedure was standard protocol pending further investigation of the claims being made, taken at face value, and not the result of a conclusion that the complainant's claims were actually true with respect to defendant's guilt, which was the subject of the trial and left to the jury to consider.  The witness's testimony is somewhat analogous to a police officer testifying that after obtaining statements from various witnesses, a defendant was arrested.  Defense counsel was not required to advocate a meritless position and raise an unfounded objection.

The complainant was also interviewed by a sheriff's department detective pursuant to a referral from Child Protective Services. At trial, the prosecutor asked the detective to describe the complainant's demeanor during the interview, and the detective described it as "appropriately uncomfortable."  Defendant contends that such phrasing amounts to an improper opinion as to defendant's guilt.  However, the challenged testimony did not address the issue of defendant's guilt. The witness continued her response by explaining that "[n]obody really wants to sit and talk about that kind of an issue as a teenager with anybody, and particularly a total stranger...."  The witness was simply expressing her opinion that being uncomfortable is appropriate in that type of situation. Defendant's trial counsel cannot be faulted for failing to raise a meritless objection.

*Jones,* Slip. Op. at * 2-3 (internal citations and footnotes omitted).

The Michigan Court of Appeals further noted in a footnote that choosing not to object to Ms. Bunton's testimony concerning the removal of the victim from the home was "consistent with defense counsel's trial theory, which was that the complainant fabricated the allegations in order to live with her stepmother, defendant's ex-wife." *Id.,* Slip. Op. at 2, n. 2.

Petitioner is not entitled to habeas relief on this claim for two reasons. First, as the Michigan Court of Appeals indicated in rejecting petitioner's claim, counsel is presumed effective and counsel's failure to object may have been reasonable trial strategy.  When defense counsel focuses on some issues to the exclusion of others, there is a strong presumption that he or she did so for tactical reasons, rather than through sheer neglect, and this presumption has particular force where an ineffective assistance of counsel claim is asserted by a federal habeas petitioner based solely on the trial record, where a reviewing court "may have no way of knowing whether a seemingly unusual or misguided action by counsel had a sound strategic motive." *See Yarborough v. Gentry,* 540 U.S. 1, 5-6 (2003)(quoting *Massaro v. United States*, 538 U.S. 500, 505 (2003)).  In the present case, counsel may very well have made a strategic decision not to object to Loni Bunton's testimony concerning the removal of the victim from Petitioner ' home

13

because it was consistent with the defense theory that the victim was fabricating these sexual abuse allegations so that she could go live with her step-mother. *See Schoenberger v. Russell,* 290 F. 3d 831, 836-37 (6th Cir. 2002)(defense counsel's failure to object to social workers' and juvenile probation counselor's testimony concerning their opinions as to the truthfulness of minor victims in reporting sexual abuse by defendant did not constitute deficient performance, to support ineffective assistance of counsel claim; failure to object was part of legitimate trial strategy to criticize the work of the social workers and to discredit one of the victims by emphasizing her drug and juvenile court involvement).

Secondly, and more importantly, Petitioner has failed to show that either witness offered an opinion as to petitioner's guilt.  As the Michigan Court of Appeals noted, the jury could have reasonably concluded that the "Pick Up Order" procedure testified to by Ms. Bunton was standard protocol while further investigation into the victim's allegations was being made and not necessarily a conclusion that the victim's allegations were true or that Petitioner was guilty.  With respect to Detective Jacobson's testimony, the detective was merely offering an opinion that it would be appropriate for a sexual abuse victim to be uncomfortable during a police interview.  Detective

14

Jacobson never suggested that she believed that Petitioner was guilty.

In the present case, neither witness offered impermissible opinion testimony on Petitioner's guilt.   Because neither witness offered impermissible opinion testimony on an issue that the jury was to decide, trial counsel was not ineffective in failing to object to this testimony. *See Campbell v. Coyle,* 260 F. 3d 531, 558-59 (6th Cir. 2001).  Petitioner  is not entitled to habeas relief on his first claim.

### B. Claim # 2.  The claim involving the admission of evidence that Petitioner  had voluntarily terminated his parental rights.

Petitioner next claims that he was denied a fair trial because the trial court admitted evidence that he voluntarily released his parental rights to the victim.   Petitioner claims that this evidence was irrelevant and more prejudicial than probative.

"[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-court questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).  A federal court is limited in federal habeas review to deciding whether a state court conviction violates the Constitution, laws, or treaties of the United States. *Id.*  Thus, errors in the application of state law, especially rulings regarding the admissibility of evidence, are usually not questioned by a federal habeas court. *Seymour v. Walker,* 224 F. 3d 542,

552 (6th Cir. 2000).

Petitioner's claim that he was denied a fair trial by the admission of irrelevant and prejudicial evidence cannot form the basis for habeas relief, because it involves a state law evidentiary issue. *See Hall v. Vasbinder*, 551 F. Supp. 2d 652, 676 (E.D. Mich. 2008); *rev'd on other grds* 563 F.3d 222 (6th Cir. 2009); *see also Oliphant v. Koehler*, 451 F. Supp. 1305, 1308 (W.D. Mich. 1978).

To the extent that Petitioner argues that the state court violated M.R.E. 404(b) by admitting improper character evidence against him, he would not be entitled to relief because this claim is non-cognizable on habeas review. *See Bey v. Bagley,* 500 F 3d 514, 519 (6th Cir. 2007); *Estelle,* 502 U.S. at 72 (Supreme Court's habeas powers did not permit Court to reverse state court conviction based on the belief that the state trial judge erred in ruling that prior injury evidence was admissible as bad acts evidence under California law); *Dowling v. U.S.*, 493 U.S. 342, 352-53 (1990)(admission at defendant's bank robbery trial of "similar acts" evidence that he had subsequently been involved in a house burglary for which he had been acquitted did not violate due process).  The admission of this "prior bad acts" or "other acts" evidence against Petitioner at his state trial does not entitle him to habeas relief,

because there is no clearly established Supreme Court law which holds that a state violates a habeas petitioner's due process rights by admitting propensity evidence in the form of "prior bad acts" evidence. *See Bugh v. Mitchell,* 329 F. 3d 496, 512 (6th Cir. 2003). Petitioner is not entitled to habeas relief on his second claim.

### C.  Claim # 3.  The prosecutorial misconduct claim.

Petitioner finally claims that he was deprived of a fair trial when the prosecutor disparaged Petitioner's exercise of his constitutional right to a jury trial and his right to confront witnesses during closing argument.

Respondent contends that Petitioner's third claim is procedurally defaulted, because he failed to object to the prosecutor's remarks at trial. Petitioner claims that his trial counsel was ineffective for failing to object to the alleged misconduct. Ineffective assistance of counsel may establish cause for procedural default. *Edwards v. Carpenter*, 529 U.S. 446, 451-52 (2000). Given that the cause and prejudice inquiry for the procedural default issue merges with an analysis of the merits of Petitioner's defaulted claim, it would be easier to consider the merits of the claim. *See Cameron v. Birkett,* 348 F. Supp. 2d 825, 836 (E.D. Mich. 2004).

"Claims of prosecutorial misconduct are reviewed deferentially on

17

habeas review." *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004)(citing *Bowling v. Parker*, 344 F.3d 487, 512 (6th Cir. 2003)).   A prosecutor's improper comments will be held to violate a criminal defendant's constitutional rights only if they "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 181 (1986)(quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).  Prosecutorial misconduct will thus form the basis for habeas relief only if the conduct was so egregious as to render the entire trial fundamentally unfair based on the totality of the circumstances. *Donnelly*, 416 U.S. at 643-45.  The Court must focus on "'the fairness of the trial, not the culpability of the prosecutor.'" *Pritchett v. Pitcher*, 117 F. 3d 959, 964 (6th Cir. 1997) (quoting *Serra v. Michigan Dep't of Corr.*, 4 F.3d 1348, 1355 (6th Cir. 1993)).  Finally, "[t]he Supreme Court has clearly indicated that the state courts have substantial breathing room when considering prosecutorial misconduct claims because 'constitutional line drawing [in prosecutorial misconduct cases] is necessarily imprecise.'" *Slagle v. Bagley*, 457 F. 3d 501, 516 (6th Cir. 2006)(quoting *Donnelly*, 416 U.S. at 645).  Thus, in order to obtain habeas relief on a prosecutorial misconduct claim, a habeas petitioner must show that the state court's rejection of his prosecutorial

misconduct claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Parker v. Matthews*, 132 S. Ct. 2148, 2155 (2012) (quoting *Harrington*, 131 S. Ct. at 786–87).  This is particularly so, "because the *Darden* standard is a very general one, leaving courts 'more leeway ...in reaching outcomes in case-by-case determinations[.]'" *Id.* (quoting *Yarborough v. Alvarado*, 541 U.S. at 664).

Petitioner contends that the prosecutor disparaged his exercise of his constitutional right to a trial and to confront the witnesses when she made the following remarks in her rebuttal argument:

> [The complainant] had to talk to a number of different people about this.  I went over all of those people that she talked to in my closing and I won't do that again, but most specifically remember what happened to her during this trial.  She had to be questioned by me, questioned by him [defense counsel], questioned by me again, she had to tell all of you total strangers about some of the most personal things that would ever happen to her.  Don't you think a kid that was making that up probably wouldn't have come through?  Probably would have backed out before now?  But she didn't.  And as if that wasn't enough during this trial she had to watch while her baby brother was put up on the witness stand, and that's [sic] wasn't my doing.  That was Mr. Sarrine [defense trial counsel] and I'm still not sure what the purpose was for that, but [the victim] had to sit there and watch while her brother was nervous, while he took the same witness stand she did.  She had to watch while her friends, the Yoders, were brought into here, and again, not people I called.  Mr. Sarrine brought those people in.  She had to watch while family

19

and friends were put through a trial.

(Tr. 11/18/08, pp. 898-99).

The Michigan Court of Appeals rejected petitioner's claim:

Read as a whole, we find that while the prosecutor laced her remarks with what could be considered a negative connotation regarding defendant having exposed the complainant to the unpleasantries of a trial, overall, the prosecutor's remarks were made in support of her argument that the complainant was credible and to attack defendant's theory that the complainant fabricated the allegations. The prosecutor pointed out that at least one of the complainant's alleged motives-to make false allegations in order to live with her stepmother-no longer existed, yet the complainant maintained her allegations and endured extensive scrutiny of both herself and her accusations of sexual abuse at trial. A prosecutor may argue from the facts in evidence that the defendant or another witness is or is not credible, and may respond to arguments raised by a defendant.

*Jones,* Slip. Op. at * 5 (internal citations omitted).

The Michigan Court of Appeals' decision rejecting Petitioner's prosecutorial misconduct claim was not an unreasonable application of clearly established federal law so as to entitle him to habeas relief. In the present case, although the prosecutor's comments in isolation appear to have been an attack on Petitioner  exercising his right to a trial, the prosecutor's remarks could just as easily have been construed to have been in support of her argument that the victim was credible and to refute Petitioner's theory that the victim had fabricated these sexual abuse

20

allegations.  Because the prosecutor's remarks were for the most part an attempt to argue that the victim should be believed, they did not render Petitioner's  trial fundamentally unfair. *See Benn v. Greiner,* 294 F. Supp. 2d 354, 368 (E.D.N.Y. 2003); *rev'd on other grds,* 402 F.3d 100 (2d Cir. 2005)(prosecutorial comments on petitioner's exercise of his right to a trial did not render trial fundamentally unfair; even though comments were arguably improper, comments were for the most part little more than a review of the evidence presented).  At the very least, because the prosecutor's somewhat ambiguous remarks could be construed as either an attack on Petitioner's exercise of his right to trial or merely as an attempt to emphasize the credibility of the victim and the strength of the prosecution's case, these comments did not deprive Petitioner  of a fair trial. *See Williams v. Borg,* 139 F. 3d 737, 744 (9th Cir. 1998)(prosecutor's alleged comment on petitioner's exercise of right to jury trial was ambiguous and thus did not deprive petitioner of his right to a fair trial).  Petitioner is not entitled to habeas relief on his prosecutorial misconduct claim.

The Court will reject Petitioner's related ineffective assistance of counsel claim.  To show prejudice under *Strickland* for failing to object to prosecutorial misconduct, a habeas petitioner must show that but for the

alleged error of his trial counsel in failing to object to the prosecutor's improper questions and arguments, there is a reasonable probability that the proceeding would have been different.  *Hinkle v. Randle,* 271 F. 3d 239, 245 (6th Cir. 2001).   Because the Court has already determined that the prosecutor's argument did not deprive Petitioner of a fundamentally fair trial, petitioner is unable to establish that he was prejudiced by counsel's failure to object to these remarks. *Slagle,* 457 F. 3d at 528.  Petitioner is not entitled to habeas relief on this claim.

## V. <u>CONCLUSION</u>

The Court will deny the petition for writ of habeas corpus.  The Court will also deny a certificate of appealability.  In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2).  To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000).  When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district

22

court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484. "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.

For the reasons stated in this opinion, the Court will deny Petitioner a certificate of appealability because reasonable jurists would not find this Court's assessment of Petitioner's claims to be debatable or wrong. *Johnson v. Smith,* 219 F. Supp. 2d 871, 885 (E.D. Mich. 2002). The Court will also deny Petitioner leave to appeal *in forma pauperis,* because the appeal would be frivolous. *Allen v. Stovall,* 156 F. Supp. 2d 791, 798 (E.D. Mich. 2001).

## VI. <u>ORDER</u>

Based upon the foregoing, IT IS ORDERED that the petition for a writ of habeas corpus is **DENIED WITH PREJUDICE.**

IT IS FURTHER ORDERED that a certificate of appealability and leave to appeal *in forma pauperis* are **DENIED.**

/s/Gershwin A Drain
**HON. GERSHWIN A. DRAIN**
Dated: July 30, 2013        UNITED STATES DISTRICT JUDGE